UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN WINCHELL,

                  Petitioner,

-vs-                                    Case No.  8:03-cv-364-T-17MAP

JAMES V. CROSBY, JR.,

                  Respondent.

_____

## ORDER

This cause is before Petitioner John Michael Winchell (Winchell's) 28 U.S.C. § 2254 petition for writ of habeas corpus.  Winchell challenges his conviction and sentence entered by the Circuit Court for the Tenth Judicial Circuit, Polk County, Florida.

### BACKGROUND

Winchell was charged by information with aggravated assault, tried by jury, convicted as charged, and sentenced as an habitual violent felony offender to ten years in prison with a ten-year minimum mandatory term.  (Exh. A).

Winchell appealed, raising two issues: the sufficiency of the evidence to support his conviction; and, the legality of the state trial court's imposition of a minimum mandatory term for his sentence when the state trial court had not orally pronounced the minimum mandatory term at his sentencing hearing. On July 7, 1999, the state district court of appeal per curiam affirmed Winchell's conviction, but reversed his sentence and remanded for entry of a written sentence that conformed to the trial court's original oral pronouncement.

*Winchell v. State,* 740 So. 2d 572 (Fla. 2d DCA 1999).  On August 24, 1999, the state trial court entered a corrected sentence. (Exh. C).

On June 12, 2000, Winchell filed a Rule 3.850 motion for postconviction relief.  (Exh. D). The sole ground raised in that motion was that his trial counsel had rendered ineffective assistance by failing to convey to him a written plea offer for a sentence of 4 years in prison under the sentencing guidelines.  That sentence would run concurrently with a Hillsborough County sentence to be imposed following the revocation of Winchell's probation in Hillsborough County.  The offer included a stipulation that the State would not seek to have Winchell adjudicated an habitual felony offender.

The state trial court ordered the State to show cause why Winchell was not entitled to relief, and the State responded that the files and records did not refute Winchell's claim. The state trial court then held an evidentiary hearing on Winchell's claim. (Transcript of the hearing found as Exh. E). At  the evidentiary hearing, Winchell testified that, in addition to his sentence in this Polk County case, he had a consecutive 9-year Hillsborough County sentence that he had received after his probation was revoked for committing the aggravated assault in the Polk County case. (Exh. E,  T 6-7). He testified that after he had been convicted and sentenced and had begun serving his prison sentence in this case, another inmate told him that he could request his file from his attorney, so he did.  (Exh. E, T 8).  He also testified that when he received the file, he looked through it and saw a plea form that reflected an offer of a 4-year guidelines sentence to run concurrently with his Hillsborough County sentence, which offer included an agreement that the state would not seek habitualization.  This, according to Winchell, stunned him. (Exh. E, T 8, 10).  Winchell

-2-

testified that his Assistant public Defender, Wayne Melnick, had never discussed such a plea offer with him. (Exh. E, T 9).  According to Winchell, had he known of this plea offer, he would have accepted it. (Exh. E, T10-11).

On cross-examination, Winchell testified that his attorney on the probation violation in Hillsborough County had delayed the revocation proceedings until after Winchell was found guilty of the Polk County charge, at which point Winchell's probation in Hillsborough County was revoked and he was given a 9-year sentence to run concurrently with his Polk County sentence. (Exh. E, T 12-14). However, Winchell was not actually sentenced in the Polk County case until after the Hillsborough County sentence had been imposed, and his Polk County sentence was ordered to run consecutive to his Hillsborough County sentence (Exh. E, T14).

Winchell's Polk County attorney, Melnick, was aware. prior to Winchell's trial, that Winchell was on probation in another case, and Winchell had told Melnick that he would accept a plea offer to plead to the misdemeanor offense of criminal mischief. (Exh. E. T 17-18). Melnick never discussed his plans for trial with Winchell, and Winchell "just left it in his hands. I felt he was my lawyer .... I thought he was easygoing, you know .... I trusted in him." (Exh. E, T 21-22). Prior to learning, after the fact, of the plea offer at issue, Winchell thought Melnick was a "nice guy," and Winchell was not dissatisfied with his representation (Exh. E, T15).

Attorney Melnick, who was an Assistant Public Defender during the time period in issue, testified that he had no disagreements with Winchell and that there was no animosity between the two of them during the course of his representation of Winchell (Exh. E, T 26-

28). Melnick specifically recalled that he and Winchell had previously spoken by telephone, but that he first met face-to-face with Winchell and Winchell's wife at his office on August 22, 1996, the day before a status conference, at which meeting both Winchell and Ms. Winchell told Melnick what had happened that had led to the aggravated assault charge. (Exh. E,  T 29-31). At the time of this meeting, Melnick had requested but had not yet received any discovery from the State.  (Exh. E, T 30). Winchell also mentioned that he was on probation in Hillsborough County, although an affidavit of probation violation had not yet been filed, and said that he would plead to criminal mischief if the State made such an offer.  (Exh. E, T 30). Melnick told Winchell that he did not yet have a plea offer from the State but expected to receive one at the status conference the next day, if not before. (Exh. E, T 30-31).

Melnick's notes reflected that he received discovery the next day, but he did not recall whether he received it before or after the status conference. (Exh. E, T 32-33). He also received the plea offer in question. (Exh. E, T 33, 35). He had no independent recollection of going over the plea offer with Winchell that day, but it was his habit to do so, and he did so in every case that he had. (Exh. E, T 34, 43-44). He did have an independent recollection of discussing the plea offer with Winchell at a later date. (Exh. E, T 36)  He specifically recalled discussing it with Winchell the morning of jury selection for Winchell's trial (Exh. E, T 36).

Winchell's trial was on February 13, 1997, and jury selection was typically done on Monday of the week that a case was set for trial.(Exh. E, T36).[1] The judge to whom Winchell's trial was assigned had a reputation for giving defendants who went to trial the maximum sentence, and Melnick made Winchell aware of this when he was notified of the judge assignment. (Exh. E, T 37). Melnick also made Winchell aware that the plea offer was definite but that the Polk County prosecutor could not bind Hillsborough County to a concurrent sentence, and both Winchell and Melnick were concerned about the possibility that Winchell could receive consecutive sentences. (Exh. E, T 38, 49). By this time, Winchell had changed his position on a plea and wanted his Polk County and Hillsborough County sentences to run concurrently. (Exh. E, T 47-48). Melnick did not recall whether he had affirmatively recommended on the morning of trial that Winchell accept the plea offer (Exh. E , T 39, 52).

By this time, Melnick had had several telephone conversations with the Hillsborough County Public Defender's Office in an attempt to work out a concurrent plea negotiation with Hillsborough County, but an accord was never reached.  (Exh. E, T 39-42, 59-60). And because "we didn't have a way to bind Hillsborough," Winchell was not willing to accept the plea offer.  (Exh. E, T 51).

John Kirkland, who was the prosecutor assigned to Petitioner's Polk County case, testified that he remembered this specific case because it was somewhat unusual. (Exh. E, T 63-66). It was not a case that he felt he could reduce to a misdemeanor, but he had

---

[1] February 13, 1997 was a Thursday.

done everything he reasonably could not to expose Winchell to the severe sentence Winchell ultimately received. (Exh. E, T 66-67, 78). Kirkland was aware that Winchell had several prior Hillsborough County felony convictions (a PSI Kirkland reviewed at the hearing reflected 13 prior felony convictions); had served time in prison prior to the aggravated assault in question; and was on probation in Hillsborough County. (Exh. E, T 66-67, 75-76). However, Kirkland made no effort to work out "any kind of joint deal" with the Hillsborough County State Attorney's Office because he did not feel that that was his responsibility; rather, he felt that the Hillsborough County Public Defender's Office probably should have taken the lead, and he was aware that Melnick had been in contact with the Hillsborough County Public Defender's Office. (Exh. E, T 68-69, 72). Melnick told Kirkland on more than one occasion that Winchell was not interested in accepting Kirkland's plea offer, but Kirkland did not recall being given a specific reason for the refusal. (Exh. E, T 70-72).

At the conclusion of the state evidentiary hearing, the state trial court orally denied Winchell's postconviction motion because the court found that the plea offer in question was communicated to Winchell. (Exh. E, T 105-106).  In a written order rendered on February 22, 2001, the state trial court denied Winchell's postconviction motion, finding that, contrary to Winchell's testimony, Winchell *was* informed of the plea offer in question and chose not to accept it.  (See Exh. F).

Winchell filed a notice of appeal of the denial of his postconviction motion on March 16, 2001.  The Second District Court of Appeal per curiam affirmed the trial court's order

denying relief on December 12, 2002, *Winchell v. State,* 835 So. 2d 1136 (Fla. 2d DCA 2002), and the mandate issued on January 7, 2003. (Exh. G.)

Winchell has timely filed a federal petition for writ of habeas corpus in this Court, raising as his sole claim the claim made in his state postconviction motion that his trial counsel rendered ineffective assistance by failing to convey to him the State's plea offer.

STANDARD OF REVIEW

Because Winchell filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Penry v. Johnson, 532 U.S. 782, 792 (2001); Henderson v. Campbell, 353 F.3d 880, 889-90 (11th Cir. 2003); Maharaj v. Sec'y of Dept. of Corrections, 304 F.3d 1345, 1346 (11th Cir. 2002). The AEDPA "establishes a more deferential standard of review of state habeas judgments," Fugate v. Head, 261 F.3d 1206, 1214 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); see, Bell v. Cone, 2005 WL 123827 (U.S. Jan. 24, 2005) (habeas court's standard for evaluating state-court ruling is highly deferential, which demands that state-court decisions be given benefit of the doubt)[citing 28 U.S.C.A. § 2254(d)]). AEDPA is relevant to a review of this Petition.

Pursuant to AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States; or

   (2) resulted in a decision that was based on an unreasonable determination
   of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); <u>Price v. Vincent</u>, 123 S.Ct. 1848, 1852-53 (2003); <u>Clark v. Crosby</u>,

335 F.3d 1303, 1308 (11th Cir. 2003); <u>Harrell v. Butterworth</u>, 251 F.3d 926, 930 (11th Cir.

2001).   "Clearly established Federal law" is the governing legal principle, not the dicta, set

forth by the United States Supreme Court at the time the state court issues its decision.

<u>Lockyer v. Andrade</u>, 538 U.S.63, 71-72 (2003).  Where no Supreme Court precedent is on

point, or the precedent is ambiguous, it cannot be said that  the state court's conclusion is

contrary to clearly established governing federal law.  <u>Mitchell v. Esparza</u>, 124 S.Ct. 7, 10

(2003); <u>Clark v. Crosby</u>, 335 F.3d at 1308-10; <u>Washington v. Crosby</u>, 324 F.3d 1263, 1265

(11th Cir. 2003).

   A state court decision is "contrary to" the Supreme Court's clearly established

precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that

contradicts the governing law as set forth in Supreme Court case law, or if the state court

confronts a set of facts that are materially indistinguishable from those in a decision of the

Supreme Court and nevertheless arrives at a result different from Supreme Court

precedent.  <u>Mitchell v. Esparza</u>, 124 S.Ct. at 10 (citing <u>Williams v. Taylor</u>, 529 U.S. 362,

405-06 (2000)).  <u>See</u> <u>also</u> <u>Price v. Vincent</u>, 123 S.Ct. at 1853; <u>Lockyer v. Andrade</u>, 538

U.S. at 75-77.  A state court does not have to cite the Supreme Court precedent, or even

be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court

precedent.  <u>Early v. Parker</u>, 537 U.S. 3, 8 (2002); <u>Mitchell v. Esparza</u>, 124 S.Ct. at 10;

<u>Parker v. Secy of Dept. of Corrections</u>, 331 F.3d 764, 775-76 (11th Cir. 2003).

A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court cases but unreasonably applies it to the facts of the particular inmate's case; or if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply; or unreasonably refuses to extend that principle to a new context where it should apply. Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000).  The "unreasonable application" inquiry requires the state court decision to be more than incorrect or erroneous; it must be objectively unreasonable. Lockyer v. Andrade, 538 U.S. at 75-77; Williams, 529 U.S. at 409-10; Penry v. Johnson, 532 U.S. at 791-792; Woodford v. Visciotti 537 U.S. 19, 25 (2002); Mitchell v. Esparza, 124 S.Ct. at 11-12; Price v. Vincent, 123 S.Ct. at 1853.

A factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Henderson, 353 F.3d at 890-91.  The statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact.  Parker v. Head, 244 F.3d 831, 836 (11th Cir. 2001).

DISCUSSION

Winchell's claim that his trial counsel had failed to inform him of the State's plea offer was refuted by defense counsel, who testified at the evidentiary hearing on Winchell's state postconviction motion that he specifically recalled apprizing Winchell of the plea offer and that Winchell had rejected the offer because the Polk County State Attorney's Office could not bind Hillsborough County to the provision of the plea offer stating  that Winchell's Polk

County sentence and Winchell's Hillsborough County sentence would run concurrently. Based on the testimony before it, the state trial court found that trial counsel *had* informed Winchell of the plea offer, and the state trial court denied the postconviction motion.

Winchell's trial counsel did not render ineffective assistance because counsel *did* inform Winchell of the state's plea offer. As noted *supra,* Winchell's trial counsel testified at the evidentiary hearing on Winchell's state court motion for postconviction relief that he received the plea offer in question immediately before or after a status conference held on August 23, 1996. (Exh. E, T 29-33, 35). Counsel had no independent recollection of going over the plea offer with Winchell that day, but it was his habit to do so, and he did so in every case that he had. (Exh. E, T 34, 43-44). Counsel he did have an independent recollection of discussing the plea offer with Winchell on February 10, 1997, the morning of jury selection for Winchell's trial, which was set for February 13, 1997. (Exh. E, T 36).

The judge to whom Winchell's trial was assigned had a reputation for sentencing defendants who went to trial to the maximum sentence, and trial counsel made Winchell aware of the judge's reputation. (Exh. E, T 37). Trial counsel also made Winchell aware that the plea offer was definite, but that the Polk County prosecutor could not bind Hillsborough County to a concurrent sentence. Both Winchell and trial counsel were concerned about the possibility that Winchell could receive consecutive sentences. (Exh. E, T 38, 49). By this time, Winchell had changed his position on a plea and wanted his Polk County and Hillsborough County sentences to run concurrently. (Exh. E, T 47-48). Trial counsel did not recall whether he had affirmatively recommended on the morning of trial that Winchell accept the plea offer, but by this time, counsel had had several telephone conversations with the Hillsborough County Public Defender's Office in an unsuccessful attempt to

work out a concurrent plea negotiation with Hillsborough County (Exh. E, T 39-42, 52, 59-60). And

because "we didn't have a way to bind Hillsborough," Winchell was not willing to accept the plea

offer. (Exh. E, T 51).

Winchell's testimony, on the other hand, was that he was never told of the plea offer and

learned of it only upon obtaining his files from the Public Defender's Office after he had begun

serving his prison sentence in this case. (Exh. E, T 8-11).

In the present case, the state trial court considered the testimony ... and ultimately

concluded that Winchell's testimony that he was never told about the Polk plea offer was not

credible. It is within the trial court's discretion to make this type of determination, and it is plain that

Winchell has failed to meet his burden here. Under *Strickland v. Washingqton*, 466 U.S. 668 (1984),

a defendant must establish two components in order to demonstrate that counsel was ineffective:

(1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the

defense. As to the first prong, the defendant must establish that "counsel made errors so serious

that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment." 466 U. S. at 687.  As to the second prong, the defendant must establish that

"counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is

reliable." *Id.* "Unless a defendant makes both showings, it cannot be said that the conviction ...

resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

Moreover, a court must be highly deferential when evaluating the performance of defense counsel,

and "must indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance [; ... ]."  Every effort should be made to eliminate the distorting

effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. *Id.*

A defendant bears the burden of establishing both prongs of the *Strickland* test before a criminal conviction will be vacated. *Schofield v. State*, 681 So. 2d 736, 738 (Fla. 2d DCA 1996), *review denied,* 683 So. 2d 484 (Fla. 1996). In this case, Winchell's self-serving statement suggesting that he would have accepted the State's plea offer had he been told that it had been made is insufficient evidence of ineffective assistance of counsel. *See State v. Moses*, 682 So. 2d 595 , 596 (Fla. 3d DCA 1996), *review denied,* 689 So. 2d 1070 (Fla. 1997), where the court adopted the test stated in *In re Alvernaz*, 8 Cal. Rptr. 2d 713, 722, 830 P. 2d 747, 756 (1992) (en banc) in support of its holding that the evidence was insufficient to support the defendant's claim of ineffective assistance of counsel for misadvising the defendant as to his potential sentence. The court quoted the *Alvernaz* opinion:

> In this context, a defendant's self-serving statement-after trial, conviction, and sentence-that with competent advice he or she would have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence. A contrary holding would lead to an unchecked flow of easily fabricated claims.

682 So. 2d at 596.

The above quote is especially applicable in the instant case. There was direct testimony from the State Attorney that the offer was made. Defense counsel also testified that he relayed the offer to Winchell. It is reasonable to conclude that counsel did, in fact relay the offer, and that Winchell rejected the offer because there was no certainty that the

sentence in the Hillsborough case would be concurrent with the sentence in the Polk County case.

The findings of the trial court with regard to this issue are supported by competent, substantial evidence. The trial court did not abuse its discretion in making this ruling, and Winchell has not refuted the findings with clear and convincing evidence.

Federal law holds that, where the evidence before the trial court is in conflict, the credibility choices are for the trial judge. *United States* v. *Howard,* 451 F. 2d 1003, 1004 (5th Cir. 1971). Accordingly, the evidence before the trial court having been conflicting, with Winchell claiming that the plea offer was not conveyed to him and his trial counsel testifying that it was, and the trial court having found Winchell's testimony not to be credible, Winchell has not demonstrated entitlement to relief in this Court.

Accordingly, the Court orders:

That Winchell's petition for writ of habeas corpus is denied, with prejudice.  The Clerk is directed to enter judgment against Winchell and to close this case.

ORDERED in Tampa, Florida, on June 16, 2005.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
John Michael Winchell